LILLIAN E. DARLAK,

*vs.*

MICHAEL T. DARLAK.

*New Castle, October 14, 1953.*

---

5. Since the question is not presented, I pass over situations where it is shown that such comparisons are not feasible.

*Robert C. O'Hora,* of Melson & O'Hora, Wilmington, for plaintiff.

*Charles L. Paruszewski,* of Wilmington, for defendant.

SEITZ, Chancellor: Plaintiff is defendant's wife. In 1940 they purchased a home in Gwinhurst and took title as tenants by the entireties. The property was mortgaged and both the bond and mortgage were signed by both parties. The testimony leaves some doubt as to whether the wife's money was used to any substantial degree in making payments on the mortgage. However, it is clear that the money of both parties was used to start a business in the late 1940's which failed. There is also a dreary marital relationship picture which it would serve no purpose to repaint. In a loose sense the parties may be said to have been living apart since about 1948. The plaintiff was living in Chester.

About August 10, 1952 the defendant-husband went to Chester where the plaintiff-wife was then living and through the use of physical force and threats brought plaintiff to the home in Gwinhurst. He forced her to remain there all night against her will. Neither party slept during the night and on the following morning defendant apparently "persuaded" plaintiff to sign certain deeds transferring the title to the Gwinhurst property from plaintiff and defendant to defendant alone. Defendant himself admitted that plaintiff was not "enthusiastic" about executing the documents. I consider this to be a high order euphemism. By this I mean that while defendant was able to persuade plaintiff to sign the deeds in question, it was apparent to me from the testimony that she was not doing so with that willingness which is required in a situation involving an alleged gift from wife to husband. As the Supreme Court of Delaware said in *Peyton v. William C. Peyton Corp.,* 23 *Del.Ch.* 321, 7 *A.2d* 737, 747, 123 *A.L.R.* 1482:

"* * * equity raises a presumption against the validity of a transaction by which the superior [husband] obtains a possible benefit at the expense of the inferior [wife], and casts upon him the burden of showing affirmatively his compliance with all equitable requisites."

Here the undisputed facts show that the wife executed deeds which caused her to divest herself of a substantial property interest under conditions which show strong evidence of duress on the husband's part. Moreover, there was admittedly no consideration flowing to the wife for her agreement to divest herself of her interest in the property. Nor were the circumstances such that there would be any "logical" reason why the wife would want to make such a transfer. Indeed, before leaving Chester she refused to sign any papers.

Thus we have a situation involving a transaction between husband and wife where the husband's own testimony suggests the possibility of duress, and where there is no showing of consideration flowing to the wife. It may also be noted that the wife never had the benefit of independent legal advice.

Therefore, I conclude that the husband failed to discharge the burden of affirmatively showing compliance with all equitable requisites to a valid transfer in this type of case. There are many facts here which evoke the court's sympathy for the husband's predicament, but "two wrongs cannot make a right," and thus the wife's extra-marital activities cannot justify the husband's conduct in connection with the transfer of the wife's interest in this property. It follows that plaintiff is entitled to the entry of an order requiring the defendant to execute an appropriate conveyance of the Gwinhurst property so that the record title will rest in plaintiff and defendant as tenants by the entireties.

Order on notice.